978 So.2d 1239 (2008)
STATE of Louisiana, Appellee,
v.
Jeffery WINN, Appellant.
No. 43,114-KA.
Court of Appeal of Louisiana, Second Circuit.
March 19, 2008.
Rehearing Denied April 18, 2008.
*1240 John Cucci, Jr., Shreveport, for Appellant.
Jeffery Winn, Pro se.
Paul J. Carmouche, District Attorney, Catherine M. Estopinal, Lea R. Hall, Jr., Brady D. O'Callaghan, Assistant District Attorneys, for Appellee.
Before WILLIAMS, STEWART and PEATROSS, JJ.
STEWART, J.
The defendant, Jeffery Winn, was convicted of second degree murder and sentenced to life imprisonment at hard labor without benefits. He appeals his conviction, urging that the trial court erred in allowing "other crimes" evidence to be introduced at trial. Finding no merit to the assignment of error, we affirm the defendant's conviction and sentence.

FACTS
On the morning of August 11, 2005, Shreveport police officers responded to a reported stabbing at a Fina gas station. The victim, Eddie Savannah, Jr., was found lying face down on the pavement in front of the store entrance in an enormous pool of blood. He had no pulse. Savannah suffered approximately 22 lacerations and stab wounds to his head, face, neck, back, and chest.
Within seconds of the 911 call, officers en route to the scene saw the defendant running on the sidewalk near David Raines Road and Skelly Street. The defendant was holding a bloody knife and had blood on his hands and shirt. Officer Daniel Denby ordered the defendant to drop the knife and to get down on the ground. The defendant complied and was handcuffed. The knife was secured, and two .357 handguns were taken from the defendant's pockets. Because the defendant had a large cut on his left index finger, he was taken to an emergency room for treatment before being transported to the police department.
After being advised of and waiving his Miranda rights, the defendant gave a free and voluntary recorded statement in which he admitted killing the victim. He attempted to justify the murder by claiming that the victim had raped him 10 or 11 years ago and threatened to do so again. He also claimed that the victim and his family have continually taunted him about the rape, thrown rocks at his house, and urinated on his house and yard. There was no police report of the alleged prior rape to substantiate the defendant's claims.
DNA testing revealed that the DNA profile of the blood sample from the blade of the knife taken from the defendant was consistent with the DNA profile of the victim. Also, the DNA profile of the blood sample from the knife's handle was consistent with the defendant being the major contributor and the victim being the minor contributor.
The defendant was charged by bill of indictment with second degree murder. On the day of the trial, the defendant withdrew his plea of not guilty and entered a plea of not guilty and not guilty by reason of insanity. The state's case was consistent with the facts set forth hereinabove.
The defendant took the stand for the defense. He admitted that he stabbed Savannah and knew that what he was doing at the time was wrong. He explained *1241 that Savannah had driven by him on the way to the gas station, rolled down his car window, and said that he and his family would "get" the defendant. The two men then "got into it" at the gas station. The defendant told the jury that he had nothing against Savannah, but he then made the allegation that Savannah had raped him years ago. He explained that his then live-in girlfriend, Diane Dotie, had let Savannah and two other men into his house. He alleged that they covered his eyes and held him down, and he stated that he awoke the next morning to find that he had two needle marks on him and a sore "behind." However, the defendant neither sought treatment at a hospital nor reported the alleged attack. He claimed that he was embarrassed, that the Savannah family "gets away with murder" and that reporting would have done no good. He claimed to have heard that the same three people were going to either rape him again or kill him. Therefore, he carried the two guns and the knife for his protection. The defendant also suggested that the Savannah family had previously sold drugs from his house, and he believed that money or drugs might still be hidden somewhere in the house. He also claimed that people threw rocks at and urinated on his house. On cross-examination, the defendant admitted to a prior conviction for "selling a little of weed," but he denied that approximately $14,000 found in a safety deposit box was drug money. He claimed to have inherited the money from his father.
To support the claim of insanity, the defense called Sergeant H.H. Hopkins of the Shreveport Police Department. Hopkins had responded to a complaint in July 2005, by a Dion Savannah alleging that the defendant had thrown a brick at him without provocation. Hopkins testified that the defendant was agitated and rambled Bible verses. He advised defendant's family to contact the coroner's office "to have him committed." However, Hopkins admitted to having no psychological training, and no medical evidence was presented to support the plea of insanity.
On rebuttal, the state called Diane Dotie, who testified that she dated the defendant from the late 1980's until 1995, and that she knew the victim. She denied allowing anyone to enter the defendant's home to drug and rape him. She also denied any knowledge of a grudge against the defendant by the victim or his family. Dotie related an incident in 2004, when the defendant approached her in a car while she was walking. They "had words," after which he showed her a gun and threatened to kill her by shooting her in the back. He told her that he would "beat the charge" by pleading insanity. Knowing him to be abusive, she immediately reported the threat to the police. The trial court overruled the defense's objection to the admissibility of this testimony.
The jury returned a unanimous verdict of guilty as charged of second degree murder. The trial court denied the defendant's motions for new trial, post-verdict judgment of acquittal, and arrest of judgment based on the inadmissibility of Dotie's testimony. The trial court ruled that her testimony was completely relevant and proper rebuttal testimony. The sentence of life imprisonment at hard labor and without benefits was imposed. This appeal followed.

DISCUSSION
The defendant's sole assignment of error is that the trial court erred in allowing "other crimes" evidence at trial, namely the testimony of Diane Dotie. He claims that Dotie's testimony was adduced without prior notice and in violation of the Louisiana Code of Evidence, and he claims her testimony resulted in a "poisoning of *1242 the jury" and an unfair trial. He asserts that Dotie's testimony related a "second hand story" suggesting his bad character and bore no relevance to any issue at trial. Moreover, he asserts that the probative value of her testimony did not outweigh its prejudicial effect.
The state responds that the defendant obtained through discovery a copy of the police report on Dotie's complaint about the defendant's threat to her. The state also maintains that prior notice was not necessary, because the defendant's testimony made the other crimes evidence relevant. Finally, the state asserts that the trial court's decision to admit the evidence is entitled to great weight and that any error resulting from the allowance of Dotie's testimony was harmless considering the overwhelming evidence of the defendant's guilt.
Generally, evidence of other acts of misconduct is not admissible due to the risk that the defendant will be convicted of the present offense on the basis that the unrelated evidence establishes him or her as a "bad person." La. C.E. art. 404(B)(1); State v. Jackson, 625 So.2d 146, 148 (La. 1993). This exclusionary rule stems from the "substantial risk of grave prejudice to the defendant" from the introduction of evidence regarding his unrelated criminal acts. State v. Prieur, 277 So.2d 126, 128 (La.1973). However, statutory and jurisprudential exceptions exist when the "evidence of other acts tends to prove a material issue and has independent relevance other than showing that the defendant is a man of bad character." State v. Silguero, 608 So.2d 627, 629 (La. 1992).
Admission of other crimes evidence requires an independent and relevant reason, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1); State v. Roberson, 40,809 (La. App.2d Cir.4/19/06), 929 So.2d 789. Still, evidence of other crimes is not admissible under Article 404 unless it tends to prove a material fact at issue or to rebut a defense, and the probative value of the extraneous crimes evidence outweighs its prejudicial effect. La. C.E. art. 403; State v. Jacobs, 99-0991 (La.5/15/01), 803 So.2d 933, 951, cert. denied, 534 U.S. 1087, 122 S.Ct. 826, 151 L.Ed.2d 707 (2002).
Explaining the state's duty relative to the admission of other crimes evidence, the supreme court in State v. Silguero, supra, stated:
Within a reasonable time before trial the state must furnish defendant with a statement in writing of the criminal acts or offenses it intends to offer in evidence specifying the exception to the general exclusionary rule upon which it relies for admissibility. State v. Prieur, 277 So.2d 126 (La.1973); La. C.E. art. 1103. Absent evidence that the state evaded Prieur notice requirements by deliberately reserving its other crimes evidence for cross-examination or rebuttal, the Prieur notice requirements do not apply where, as here, defendant, through his own testimony, makes the other crimes evidence relevant. (Citation omitted.)
The record does not reveal that the state withheld the other crimes evidence in its case-in-chief to circumvent Prieur notice requirements. Thus, under the circumstances, the other crimes evidence was admissible without Prieur notice.
Silguero, 608 So.2d at 630. (Emphasis added).
*1243 A trial court's ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. State v. Cooks, 36,613 (La.App.2d Cir.12/04/02), 833 So.2d 1034. Moreover, the erroneous introduction of other crimes evidence is subject to harmless error review to determine whether the verdict rendered was surely unattributable to the alleged error. Id.
Clearly, the record supports the trial court's ruling that the contested evidence was admissible. The defendant has not shown that the trial court abused its discretion in allowing Dotie's testimony. The rebuttal testimony by Dotie regarding the defendant's "other crimes, wrongs or acts" was offered to show his motive, intent, or plan to use insanity to avoid punishment, and it was admissible to rebut the defendant's insanity defense. The probative value of the testimony more than outweighed any prejudicial effect considering the magnitude of the evidence establishing the defendant's guilt. Furthermore, there is no evidence that the state evaded the Prieur notice requirements by deliberately reserving this other crimes evidence for rebuttal. The defendant's testimony, particularly his allegations about the Savannahs and the alleged rape, made the other crimes evidence relevant. Therefore, the Prieur notice requirements do not apply under the circumstances of this case.
Even if the admissibility of the rebuttal testimony by Dotie was found to be in error, it would be considered harmless error. The verdict of guilt was supported by other evidence, including the defendant's own testimony, that more than sufficed to prove that he committed second degree murder of Eddie Savannah, Jr., by stabbing him numerous times.
We find, as did the trial court, that the rebuttal evidence of other crimes, wrongs or acts was admissible.

CONCLUSION
Finding no merit to the defendant's assignment of error, we affirm his conviction and sentence.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, PEATROSS and MOORE, JJ.
Rehearing denied.